FILED
2021 Jun-24 PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL DOUGLAS HAYES,** | } |
| Plaintiff, | } |
| v. | } Case No.: 7:20-CV-00446-RDP |
| **ANDREW SAUL, Commissioner of Social Security,** | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Michael Douglas Hayes brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed and remanded.

**I.     Proceedings Below**

Plaintiff filed his application for DIB on February 21, 2017 alleging a disability onset of April 27, 2011. (R. 165). Plaintiff's application was initially denied by the Social Security Administration on April 7, 2017. (R. 105). Plaintiff requested a hearing and one was conducted by Administrative Law Judge ("ALJ") Sheila E. McDonald on October 18, 2018. (R. 110, 127). In her decision, dated February 13, 2019, the ALJ determined that Plaintiff had not been under a disability within the meaning of §§ 216(i) and 223(d) of the Act from the date of the alleged, through the date he was last insured (hereinafter, "the date last insured"). (R. 18). After the Appeals

Council ("AC") denied Plaintiff's request for review of the ALJ's decision (R. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II.     Background

On April 27, 2011 Plaintiff was picked up multiple times in a tornado, and as a result sustained injuries. (R. 55-56). Plaintiff primarily suffered a compression fracture of the lumbar spine, and a medial collateral ligament (MCL) tear to his right knee. (R. 245-257). In addition to these physical injuries, Plaintiff also alleges that he suffers from anxiety/depression and insomnia. (R. 184).

Prior to the incident, Plaintiff was a service manager and mechanic at an auto shop. (R. 40-41, 185). In November 2010, the building collapsed and the owner decided to dissolve the business. (R. 41). Subsequently, Plaintiff attempted to start his own computer software business but had to shut down six months after the tornado when he was unable to keep up with his work after he incurred his injuries. (R. 41-42).

During his alleged period of disability (April 27, 2011 – December 31, 2015), Plaintiff received medical treatment from his primary care physician, Dr. David Harding. (R. 353-408). Consistent treating physician notes related to visits during this period, (which occurred once every three months or so) state that Plaintiff was treated for hypertension, hyperlipidemia, insomnia, and chronic pain syndrome with sciatica. (*Id.*). Through the date last insured, Plaintiff's medical records show "occasional[] adjust[ments], but his physical examinations are generally within normal limits and there [was] no discussion of limitations." (R. 23). Plaintiff began seeing Dr. Eugene Mangieri (on a referral from Dr. Harding) in September 2016 for pain management. (R. 499). Dr. Mangieri prescribed Plaintiff Methadone for his chronic back pain. (*Id.*). On March 8,

2017, the treatment notes indicate that the pain would intensify during the day; Dr. Mangieri increased his dosage. (R. 478). The following month on April 5, 2017, Dr. Mangieri wrote that Plaintiff reported having the "best month in a long time" and noted that Plaintiff had lost over 100 pounds during the past year due to increased dieting and activity. (R. 474). From May 3, 2017 – October 18, 2017 there was no change in his back pain and he was stable on his medications. (R. 455-473). On October 18, 2017, Dr. Mangieri noted that Plaintiff was "doing well on Methadone," his depression improved and he continued losing weight. (R. 455). On December 13, 2017 Dr. Mangieri noted that Plaintiff experienced "increased pain with strenuous activity," but then on January 9, 2018 he again noted that Plaintiff was "doing well on Methadone." (R. 446). On April 4, 2018 Dr. Mangieri wrote that Plaintiff reported having "increased pain over [the] past 3 months which has impaired his activity," so his Methadone dosage was increased yet again. (R. 433). A month later, on May 2, 2018, he noted that Plaintiff's pain was "well controlled" and observed again on July 3, 2018 that Plaintiff was "doing well with current dose of Methadone. Activity level [is] stable." (R. 423). Records from the three visits to Dr. Mangieri following the July 3, 2018 visit do not provide any additional notes regarding Plaintiff's back pain, indicating his pain was stable; however, Dr. Mangieri continued the increased dosage of Methadone. (R. 413-423).

Dr. Mangieri also completed a medical source statement on October 15, 2018. (R. 347-350). This statement noted that Plaintiff was unable to sit for longer than 15 minutes, and unable to stand for longer than 5 minutes. (R. 348). It also stated that Plaintiff would need to include periods of walking around during an 8-hour work day approximately every 10 minutes, lasting 2 minutes each time. (R. 348-349). It also stated that Plaintiff would have good and bad days that would likely cause him to be absent from work "more than four days per month." (R. 350).

3

Through the date last insured, the vocational expert found that Plaintiff would be unable to perform his past relevant work as actually or generally performed. (R. 79).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past

4

relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff did not engage in substantial gainful activity since the date last insured, which meets step one of the analysis, and the ALJ further determined that he had a severe impairment, which satisfies step two of the analysis. (R. 19). The severe impairment that the ALJ noted was a "compression fracture of the lumbar spine;" however, the ALJ also mentioned "chronic pain syndrome" in her discussion of Plaintiff's disability. (R. 23). The ALJ found that the claimant's MCL tear was not severe based on prior treatment records. (R. 20). Further, in analyzing the four functional areas related to mental residual functional capacity, the ALJ found that Plaintiff's anxiety and depression also do not cause a severe impairment. (R. 20-22). In applying the pain standard for claimant's back pain, the ALJ found that both Plaintiff's subjective testimony of pain was inconsistent with the medical records, and that the medical source statement provided by his treating physician, Dr. Mangieri, was inconsistent with his own medical records. (R. 24). The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526" noting that:

> The evidence does not establish that [Plaintiff's] impairments, individually or in combination, meet or equal the severity of impairments in Appendix 1, Subpart P, of 20 CFR 404. Specifically, the record does not indicate that the impairments of [Plaintiff's] compression fracture of the lumbar spine, individually and in

5

combination with other impairments, results in an inability to ambulate as required by Sections 1.02 or 1.04.

(R. 22). The ALJ also found that Plaintiff has:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs, stoop and crouch; he should never climb ladders, ropes or scaffolds, kneel or crawl; he can have only occasional exposure to extremes of cold as well as vibration; he should have no exposure to hazards such as unprotected heights and dangerous machinery; he would need to alternate between standing and sitting every hour for 1-3 minutes but would remain on task at the work station.

(*Id*.). Finding that Plaintiff could perform light work subject to limitations, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could [perform]" such as a "document preparer (DOT 249.587-018) with 91,000 representative jobs in the national economy; a check weigher (DOT 737.687-026) with 12,000 representative jobs in the national economy; and a final assembler (DOT 713.687-018) with 25,000 representative jobs in the national economy." (R. 26).

## III.     Plaintiff's Argument for Reversal

Plaintiff contends that "the decision of the Commissioner is not supported by substantial evidence, and contains errors of law warranting reversal, so the decision of the Commissioner should be reversed and remanded for payment of benefits, or in the alternative, it should be remanded for a proper decision after developing the record." (Doc. #14 at 16).

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial

evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1010-1011 (11th Cir. 1987).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See id*. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**

Plaintiff makes three arguments: 1) the ALJ's decision at step two of the sequential evaluation process was unsupported by the substantial evidence; 2) the ALJ improperly rejected his testimony concerning his pain, and this determination is not in accordance with the legal standards of the Eleventh Circuit; and 3) the ALJ improperly rejected the opinion of his treating physician. (Doc. #14 at 4).

**A.    The ALJ properly determined which impairments were "severe" at step two of the sequential evaluation process.**

Plaintiff contends that the ALJ erred in determining that his only "severe" impairment was his compression fracture of the lumbar spine. (Doc. #14 at 4). Plaintiff also maintains that the ALJ "gave no rationale" for why his "chronic pain syndrome" and/or his depression and anxiety were not "severe." (Doc. #14 at 4). The court agrees with Plaintiff that his medical treatment records

7

are "replete with notations of the diagnosis of chronic pain syndrome" (Doc. #14 at 5); however, the record evidence indicates that Plaintiff's compression fracture impairment would not be severe absent any pain. As the Eleventh Circuit has held, even when an ALJ does not indicate whether "chronic pain syndrome" is a severe impairment, "the error was harmless [when] the ALJ conclude[s] that [claimant] had a severe impairment[] and that finding is all that step two requires." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824 (11th Cir. 2010); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Therefore, regardless of whether the ALJ specifically noted "chronic pain syndrome" as the severe impairment, she still found that there was a severe impairment. Thus, any error is harmless. *Id.*

As to the ALJ's determination that Plaintiff's anxiety and depression were not severe, the medical records support this finding. Plaintiff's anxiety was first noted by Dr. Harding on August 4, 2015, while at the same time he also noted that Plaintiff was "under more stress recently working at the vape shop as the manager." (R. 390). Besides this, there was no prior notation of treatment for depression or anxiety from any specialist or from Plaintiff's treating physicians. Therefore, as of the date last insured, substantial evidence supports a finding that claimant's anxiety and depression were not severe.

> **B.** **The ALJ improperly discredited both Plaintiff's subjective testimony regarding pain, and the medical source statement provided by Dr. Mangieri.**

Plaintiff next argues that the "ALJ conflated her rationale for rejecting Dr. Mangieri's opinion with her rationale for rejecting [Plaintiff's] testimony of disabling pain." (Doc. #14 at 16). The court agrees. As these two issues are intertwined, the court will review them together.

The Eleventh Circuit has established a "pain standard" that applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Dyer v. Barnhart*, 395 F.3d

1206, 1210 (11th Cir. 2005). The pain standard requires: "(1) evidence of an underlying medical condition *and either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added). If a claimant testifies to his chronic pain, "the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations." *Id.*; *Dyer*, 395 F.3d at 1210 (holding that the ALJ properly applied the *Holt* pain standard in rejecting claimant's subjective testimony of pain as being inconsistent with the medical record because the claimant's pain did not show routine or consistent treatment, and the pain medication claimant was prescribed was for "mild to moderate pain," noting that the medical record only mentioned once that claimant was prescribed Lortab which was "used to treat severe pain").

Further, although the ALJ need not make an explicit finding of credibility on the claimant's testimony, the "implication must be obvious to the reviewing court" and the credibility determination cannot merely be a "broad rejection" that would preclude the reviewing court from finding that the "ALJ considered [the] medical condition as a whole." *Id.*; *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The court in *Foote* found that "[t]he ALJ did not make a specific finding[] as to [the Plaintiff's] credibility," because the ALJ "appear[ed] to have credited [Plaintiff's] testimony about [his] daily activities, yet discredited [his] testimony as to the extent of [his] disabling pain." 67 F.3d at 1562. As the Eleventh Circuit stated:

> [W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the [] decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding. […] The missing (or implicit) credibility determination is vital to our review of the ALJ's decision because a claimant's testimony typically conveys more than a simple statement as to the subjective pain [he] suffers. [Complaints made by a claimant] including pain, provide the basis for

9

assessing the overall functional capacity of the individual. If these complaints are rejected, the reasons should be expressed.

*Id.*; *see also Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 869 (11th Cir. 2019).

The ALJ's reasoning for discrediting Plaintiff's testimony purports to list why the testimony was inconsistent with the medical source statement (that was given no weight). It contained no "explicit and adequate reasoning," *Dyer*, 395 F.3d at 1210, as to why Plaintiff's testimony is inconsistent with the treating physician records from either Dr. Harding or Dr. Mangieri. (R. 24). The fragments of claimant's testimony that the ALJ brought to light stated that:

> [T]he limitations in [Dr. Mangieri's] medical source statement are not consistent with his treatment records, as discussed in the paragraph above. More specifically, the claimant testified that he helps care for his mother who is in a wheelchair and he brings her food. He said that [he] has a driver's license and drove himself to the hearing. He said he can ride a riding lawn mower and that helps his father pick up light sticks in the yard. These are all inconsistent with this medical source opinion.

(R. 24). Absent the discussion regarding the medical source statement, the court cannot discern any "explicit and adequate reasons" as to why there is direct conflict or inconsistency with the treatment records. *Holt*, 921 F.2d at 1223. As pointed out, the treatment records from Dr. Harding continually note "chronic pain syndrome." (R. 378-408). Plaintiff started seeing Dr. Mangieri in September 2016. (R. 499). The ALJ noted at that point in time that the treatment records "characterize [Plaintiff's] pain, with periodic review and occasional adjustment, as stable." (R. 24). The ALJ again found this to be directly inconsistent with the medical source statement, but did not explain why it conflicted with Plaintiff's testimony of pain. (*Id.*) A patient's treatment notes for pain can be characterized as "stable," but the patient may nevertheless have limitations that can be reasonably expected to arise from such pain. *See Dyer,* 395 F.3d at 1210; *see also Chatham*, 764 F. App'x at 869 (providing that although [the claimant] could perform various minor daily activities, this alone cannot support a finding of the "third prong" of the pain standard when

other subjective testimony that the ALJ did not indicate was considered showed that the claimant's daily activities had been "significantly affected" or limited). Plaintiff has been consistently treated for pain prior to the date last insured by Dr. Harding, his primary care physician, and has consistently been prescribed medication used for *severe* pain, including Lortab. (R. 378-408). When the pain did not subside after being treated for four years, Plaintiff began seeing Dr. Mangieri in 2016, a pain management specialist, who started Plaintiff on Methadone which he has been continually prescribed due to consistent pain. (R. 413-99).

The ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of his [] symptoms, [] are not consistent with the objective medical evidence of record." (R. 24). Applying the "pain standard" set forth by the Eleventh Circuit to these record facts, because there is "evidence of an underlying medical condition," and the ALJ found that Plaintiff's compression fracture of the lumbar spine could "reasonably be expected to cause the alleged symptoms of pain," then Plaintiff's subjective testimony "is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Further, since the ALJ did not credit Plaintiff's testimony, and did not "articulate explicit and adequate reasons for [not] doing so," as a matter of law, the "testimony [must] be accepted as true." *Id.*

The court concludes that the ALJ incorrectly applied the "pain standard" to determine whether Plaintiff was disabled. And, even if it could be said that the ALJ properly applied the pain standard, she did not set forth "explicit and adequate reasoning" for discrediting the subjective testimony of Plaintiff. Further, regardless of whether the medical source statement was given any weight, in assessing the subjective testimony of Plaintiff, the ALJ should have considered the

medical records as a whole (along with the subjective testimony) in determining what jobs Plaintiff is able to perform.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence as the ALJ did not properly apply the "pain standard" in reaching this determination. The Commissioner's final decision is therefore due to be reversed and remanded for further proceedings consistent with this Memorandum of Decision. A separate order in accordance with this decision will be entered.

**DONE** and **ORDERED** this June 24, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE